ROSALIE FEAR WELCH ET AL. *v.* JOHN H. BYERLY
ET AL.

*Judicial Sale—Advertisement.*

The advertisement should direct the attention of the public to any facts having a tendency to increase the value of the property, especially those facts which would ordinarily be unknown to the public, but the failure to state such facts will not defeat a sale otherwise fairly made, where it is not shown that the property was sold for an inadequate price because of such failure.                                                 p. 112

The fact that the advertisement failed to refer to ordinances, authorizing the opening of certain avenues which would pass through the property, *held* not ground for setting aside the sale, the advertisement having specifically mentioned such avenues by name, with the statement that when opened they would pass through the property, it having also stated that a plat of the property could be procured from the trustee or auctioneer, the auctioneer having at the sale exhibited a plat which showed these avenues as laid down by the ordinances, and the price obtained being adequate in view of the uncertainty as to when and where, if ever, the avenues would be opened.   pp. 112, 113

In considering the adequacy of the price paid for an undeveloped tract of land, the mere possibility that avenues may be opened through it under existing city ordinances was not to be considered.                                           p. 114

*Decided March 2nd, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Petition by John H. Byerly and Emma Biddison Byerly, his wife, assignees of a mortgage executed by Mary Fear Leckner and John B. Leckner, her husband, for a decree

of sale under said mortgage. From an order overruling exceptions to the sale, Rosalie Fear Welch, Margaret Fear McKenna, and Elizabeth Raith appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Vernon Cook,* for the appellants.

*Edward L. Ward,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

This Court is called upon in this case to review the action of the lower court in overruling exceptions to, and in ratifying, a sale made by a trustee under a mortgage of a lot of land, lying and being in the City of Baltimore, the ground of the exceptions, briefly stated, being that the property at such sale brought an inadequate price because of the alleged insufficiency of the advertisement under which it was sold.

The property covered by the mortgage, consisting of about sixteen acres of undeveloped land, is located between North Avenue and Liberty Heights Avenue, adjoining on the north and east the property of Alexander Brown, known as Mondawmin, and on the south the property of Wm. H. Buckler; and near it on the west is the Western Maryland Railroad.

It is shown from the record that on the 25th day of April, 1911, the Mayor and City Council of Baltimore passed an ordinance, known as Ordinance No. 678, authorizing and directing the Commissioners for Opening Streets to "condemn and open Gwynns Falls Parkway * * * from the intersection formed by the southwesternmost side of Liberty Heights Avenue (formerly Old Liberty Road) and the southwesternmost side of Reisterstown Turnpike Road to the outline of the land conveyed to the Mayor and City Council of Baltimore by John B. Roberts, etc." This avenue when opened would pass from west to east through the northern section of the mortgaged property, known as the Boston Fear Home Place, which will hereafter be designated

as the "Fear Property," and also through the property of
Alexander Brown before reaching Liberty Heights Avenue.
Mr. Brown opposed the opening of the avenue through his
property as laid down by said ordinance, and nothing further
was done until July 14th, 1916, when the Mayor and City
Council passed two ordinances, Nos. 169 and 170. The first
of these closed that part of the avenue, laid down by Ordi-
nance No. 678, which passed through the Brown property
and for a part of the distance through the Fear property;
while Ordinance No. 170 relocated the parkway through the
Brown property, north of its original location, and for a
part of the way through the Fear property.

On May 18th, 1923, a third ordinance was passed, known
as No. 916, authorizing and directing the Commissioners for
Opening Streets "to condemn, open and grade Gwynns Falls
Parkway * * * from Pennsylvania Avenue to Gwynns Falls
Parkway as now condemned." This avenue when opened
would pass through the extreme southern part of the Fear
property.

On February 7th, 1924, a further ordinance was passed,
known as Ordinance No. 92. By this ordinance the Com-
missioners for Opening Streets were authorized and directed
to close that part of Gwynns Falls Parkway which was to be
opened under the first ordinance (Ordinance No. 678) from
the point of its intersection, on the west, with the avenue
to be opened under Ordinance No. 916, to the Fear property.

Upon the closing of such part of Gwynns Falls Parkway,
laid down under Ordinance No. 678, the said parkway was
left without an outlet on the west. The closing of such part
of it, it seems, was done to avoid going under the railroad
in two places, one upon each of said parkways, as laid down
by the ordinances mentioned, and with the idea of connect-
ing the northern with the southern parkway over the Fear
property as disclosed by the plat on page 97 of the record,
which the reporter is asked to insert in his report of this
case. But nothing has been done, so far as the record dis-
closes, towards relocating said northern parkway so as to

connect it, as aforesaid, with the southern parkway, nor has anything been done towards the physical opening of any of said parkways except the grading of the Liberty Heights Avenue end of Gwynns Falls Parkway, relocated under Ordinance No. 170, which grading is confined to the part of such highway passing through or over the Brown property, and no title to any of the land so condemned through the Fear property has ever been acquired. Nor, so far as the record discloses, has the title to any of the lands condemned under any of said ordinances been acquired by the city.

This was the status or condition of things in respect to the ordinances named, when the property was advertised for sale by the trustee, not only in the Daily Record, but in the Sun and the Evening News, all of which are published in Baltimore City. In the Daily Record the property is referred to and described therein as follows:

"Trustee's Sale of a splendid tract of ground for development purposes, being in fee simple and consisting of sixteen acres, more or less, with large brick man-

sion house thereon, known as the Boston Fear Home Place, located on the west of, and adjoining the Alexander Brown property which fronts on Pennsylvania Avenue and Liberty Heights Avenue, and adjoining the property of William H. Buckler on the south, having an entrance on Elgin Avenue to the northwest of Monroe Street and Pennsylvania Avenue. It is believed that Gwynns Falls Parkway and Mondawmin Avenue when opened will go through this property."

The advertisement appearing in the Sun and News was as follows:

"Trustee's Sale
of an Advantageous and
Excellently Well-Located
Fee-Simple Property
Comprising About Sixteen
(16) Acres, Improved by a
Large Brick Mansion."

"The property is known as 'The Boston Fear Home Place.' It is to an unusual degree opportunely situate for development, and is described in detail in the advertisement appearing in 'The Daily Record,' copies of which advertisement may be had at the office of the trustee or auctioneers, where also a plat of the property may be procured.

"It adjoins the Alexander Brown property on the east, and the William H. Buckler property on the south, access through Elgin Lane at Pennsylvania Avenue and Monroe Street. It is believed that Gwynn's Falls Parkway and Mondawmin Avenue, when opened, will intersect the property. The property lies to the southwest of the intersection of Liberty Heights and Pennsylvania Avenues."

The basis of the exceptions filed by the appellants, part owners of the equity of redemption in the mortgaged property, is the alleged insufficiency of the reference in the advertisement to the opening of said avenue through the property sold, wherein it is said, "it is believed that Gwynns Falls

Parkway and Mondawmin Avenue (the name by which, it seems, one of said parkways is known and called) when opened will go through the property." The contention of the exceptants being that specific reference should have been made in the advertisement to the ordinances, from which possible purchasers could have considered the question, first, when the avenues would actually be opened thereunder, if at all, and, second, the effect thereof upon the value of the propeprty if, or when, opened; and they contend that as the trustee failed to make such specific reference in the advertisement to the ordinances, the sale should not have been ratified.

The advertisement should describe the property in a reasonably accurate manner, so as to enable the general public to understand, by the exercise of ordinary intelligence, what property is offered and to identify the same by examination if a more particular knowledge of the exact location is desired, and it should at the same time direct the attention of the public to any important fact or facts connected therewith, having a tendency to increase the value of the property, especially those facts which ordinarily would be unknown to the public, so that any one thinking of purchasing it could, if he so wished, inform himself as to such facts and the effect of them upon the value of the property; but the failure to state such facts would not defeat the sale, otherwise fairly made, where it is not shown that the property was sold for an inadequate price because of such failure. 35 *C. J.* 23; 10 *R. C. L.* 43; *Stevens v. Bond,* 44 Md. 506; *Stewart v. Devries,* 81 Md. 528; *Kauffman v. Walker,* 9 Md. 240.

It is true that in this case the advertisement inserted in the newspapers did not refer to the ordinances, but it specifically mentioned, by name, the avenues or parkways that were to be opened under those ordinances, saying that when opened they would go through the property. By such statement the attention of the public was directed to the possibility of these avenues being opened at some time. This it

seems should have been sufficient to cause persons interested to inquire further and acquire all ascertainable facts as to the opening of the avenues or parkways, suggested by the advertisement. In addition thereto the public was told by the advertisement that a plat of the property could be procured from the trustee or auctioneer, and on the day of the sale the auctioneer produced and exhibited a plat or tracing which he had procured from Major Shirley, the city's engineer, showing the proposed Gwynns Falls Parkway, as laid down by said ordinances. This plat was examined by a number of those present, in fact, by all who wished to examine it, and then the auctioneer inquired if any further information was desired and, receiving no response thereto, he proceeded to sell the property.

The auctioneer announced at the sale that he had called at the public improvement service office to learn what he could concerning the opening of the proposed avenue, but obtained no definite information in respect thereto. The fact that he received no definite information as to the opening of the parkways was no doubt due to the uncertain status or condition then existing as to them. The first of these ordinances was passed so early as 1911. Since then other ordinances have been passed from time to time, changing the proposed location of said parkway as laid down under the first ordinance, leaving it, at the time of the sale of the property, without an outlet on the west. The parkway running through the southern section of the property was located under an ordinance passed May 18th, 1923, but nothing has been done towards the physical opening of said parkway, nor has the city acquired a title to the land condemned under this or any of said ordinances. Under these facts and circumstances no assurance at least could have been given as to when or where the parkway would be opened, if at all.

It is not contended that the price for which the property was sold is inadequate with no streets or highways passing through it. It is only with said parkways actually opened that the property is more valuable or the price inadequate;

consequently with the parkways not opened and with the uncertainty as to when and where they will be opened, if ever, such value is not the one to be considered in the sale of the property at this time. The fact that in the advertisement no reference was made to the ordinances should not, in our opinion, under the facts and circumstances of this case, defeat the sale. Therefore, we will affirm the order appealed from, overruling the exceptions and ratifying the sale.

*Order affirmed, with costs.*